Case 4:25-cv-02782   Document 20   Filed on 09/15/25 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas

**ENTERED**
September 15, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MANI IYER, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-2782 |
| | § | |
| SYNDIGO LLC, *et al.*, | § | |
| | § | |
| Defendant. | § | |

**Memorandum and Opinion**

Mani Iyer sued Syndigo, LLC, Anil Kini, and Upendranath Varanasi, asserting contract and tort claims stemming from an alleged failure to award Iyer 41,000 shares of stock in Riversand Technologies Inc. as part of a consulting arrangement in late 2004 and early 2005. After Syndigo purchased Riversand in 2021, a Riversand representative contacted Iyer to inform him of the purchase and ask him to sign documents that would implement a payout for the Riversand stock he owned that the purchase would cancel. Iyer alleges that Syndigo offered to pay for only 620 restricted stock units, not for the 41,000 shares he was to have acquired under the 2004-2005 consulting arrangement or for an amount reflecting the company's near 40-times increase in value over the two decades since Iyer served as a consultant.

Syndigo moves to dismiss Iyer's breach-of-contract and fraud claims for failure to state a claim. (Docket Entry No. 4). It argues that Iyer's claims are barred by the statute of limitations and the doctrine of laches. (*Id.* at 14–18). Syndigo also argues that Iyer failed to allege facts that would entitle him to relief. (*Id.* at 18–21).

After a careful review of the complaint, the motion to dismiss, the response, and the reply, the court grants Syndigo's motion to dismiss, with prejudice because amendment would be futile. The court explains its reasoning below.

## I. Background

On December 2, 2004, Mani Iyer executed a Consulting Agreement with Riversand Technologies Inc. The Agreement called for Iyer to provide consulting services for three months. (Docket Entry No. 1-1 ¶¶ 9–11; Docket Entry No. 4-1). The parties executed an Addendum on March 2, 2005, extending the consulting arrangement for an additional three and a half months. (Docket Entry No. 1-1 ¶¶ 11–13; Docket Entry No. 4-2). The Agreement and the Addendum awarded Iyer $6,000 and 8,000 shares of common stock per month, subject to Riversand's shareholder agreement. (Docket Entry No. 4-1 § 4; Docket Entry No. 4-2 § D). The Consulting Agreement required Iyer to issue monthly invoices to Riversand for services, "due and payable" within 30 days. (Docket Entry No. 4-1 § 4).

Iyer was retained to help Riversand identify potential merger or acquisition opportunities. (Docket Entry No. 1-1 ¶ 24). But around the time Iyer consulted for Riversand, the company struggled financially; Riversand posted a net income loss of $319,122 for the first quarter of 2005. (*Id.* ¶ 11). Riversand could not find a viable merger or acquisition partner, and the parties did not renew the consulting arrangement after the Addendum expired. (*Id.* ¶ 9).

On June 6, 2006, Iyer contacted Upendranath Varanasi, one of Riversand's cofounders, complaining that he had not yet received the stock shares under the Consulting Agreement and the Addendum. (*Id.* ¶ 13). Varanasi asked Iyer for an accounting of the shares he claimed. Iyer responded with the following calculation: 3,167 shares in December 2004; 8,000 shares in January2005; 8,000 shares in February 2005; 9,666 shares in March 2005; and 12,167 shares in

April 2005. (*Id.*). Neither Varanasi nor another Riversand employee responded to Iyer's email, and Iyer does not allege that he later contacted Riversand about the stock. (*Id.* ¶¶ 13–14).

On May 28, 2021, Saloni Sachdev of Riversand sent Iyer a DocuSign request for a document labeled "Form of Restricted Stock Unit ('RSU') Cancellation." (*Id.* ¶ 16; *see* Docket Entry No. 4-3). Iyer then learned that Syndigo had acquired Riversand. When Iyer asked about the Cancellation Form, Sachdev confirmed that Iyer stood to receive approximately $20,000 for the 620 restricted stock units that Riversand had previously granted Iyer. (Docket Entry No. 1-1 ¶ 16). Iyer alleges that this was the first indication that Riversand had failed to award him the 41,000 shares of stock he was allegedly due in 2006. (*Id.*). Sachdev then arranged a call between Iyer and Varanasi. Iyer alleges that, during the call, Varanasi "refused to explain how [Iyer's] 41,000 shares had been converted into 620 [restricted stock units] or why the shares had seen no appreciation in value despite the company's enterprise value growing an estimated 40X during that same period." (*Id.*).

On May 16, 2025, Iyer filed this suit against Syndigo, Kini, and Varanasi, alleging fraud and breaches of contract and fiduciary duties. Iyer alleges that the defendants breached the Consulting Agreement and Addendum by failing to award Iyer 41,000 shares of stock or by improperly converting that stock into 620 restricted stock units. (*Id.* ¶¶ 22–27). Iyer alleges that this same conduct breached the fiduciary duties of good faith, loyalty, and full disclosure that Kini and Varanasi owed. (*Id.* ¶¶ 28–31). Iyer also asserts that the defendants defrauded him by lying about the value and number of Riversand shares he would receive. (*Id.* ¶¶ 32–34). In addition to compensatory damages and declaratory relief, Iyer requests attorney's fees and exemplary damages. (*Id.* ¶¶ 36–39).

## II. The Applicable Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted) (alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

## III. Analysis

Syndigo raises two primary reasons to dismiss Iyer's breach of contract and fraud claims: the statute of limitations and laches. Syndigo also argues that Iyer failed to state a claim for breach of contract and fraud. The court considers only Syndigo's limitations argument because the statute

of limitations precludes Iyer's breach-of-contract and fraud claims, both as alleged and with any possible amendment.[1]

### A.     Statute of Limitations

Texas law requires plaintiffs to bring any claim for breach of contract, breach of fiduciary duty, or fraud by four years after the day the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.004, 16.051. A cause of action accrues "when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011). So contract claims accrue "when the contract is breached." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006) (per curiam) (quoting *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002)). And fraud claims accrue when the defendant perpetrates the fraud or, if the fraud is concealed, when the plaintiff discovered or could have discovered the fraud with reasonable diligence. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988).

Iyer alleges facts that demonstrates that, in 2006, he knew or should have known through reasonable diligence about each of his claims. Iyer's consulting relationship with Riversand ended in early 2005. The parties' consulting agreements required Iyer issue invoices that would become "due and payable" 30 days later after receipt. (Docket Entry No. 4-1 § 4). Because "a party breaches a contract when it fails to pay an invoice on or before the date payment is due," *IDA Eng'g, Inc. v. PBK Architects, Inc.*, No. 15-cv-1418, 2016 WL 5791674, at *2 (Tex. App.—Dallas Oct. 4, 2016, no pet.) (mem. op), the limitations period started to run on Iyer's contract claims on the due date of each invoice or demand for payment Iyer issued in the mid-2000s, *see Oro-Castillo*

---

[1] Iyer argues that Syndigo improperly converted its motion to dismiss into a motion for summary judgment by relying on the Consulting Agreement, the Addendum, and the Cancellation Agreement and attaching them to its motion to dismiss. (Docket Entry No. 6 at 29–37). Iyer refers to these documents in his complaint and they are integral to his claims, so Syndigo may rely on them in its motion to dismiss. *Sligh v. City of Conroe*, 87 F.4th 290, 297 (5th Cir. 2023).

5

*v. Nat'l Specialty Servs.*, No. 01-cv-01319, 2002 WL 971913, at *3 (Tex. App.—Dallas, May 13, 2002, no pet.) (mem. op) (holding that limitations ran from the due date of the invoice); *Spin Dr. Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 362 (Tex. App.—Dallas 2009, pet. denied) ("When recovery is sought on an obligation payable in installments, the statute of limitations runs against each installment from the time it becomes due."). At the latest, the four-year limitation period started in June 2006, when Iyer asked Riversand to issue him 41,000 shares of stock. (Docket Entry No. 1-1 ¶ 13). The statute of limitations bars Iyer's contract claim.

Iyer's fraud claim fails for the same reason. The latest alleged misrepresentation in Iyer's complaint occurred in June 2006, when Varanasi asked Iyer for an accounting of the shares Iyer claimed he was owed. (*Id.* ¶¶ 11–13, 32–34). Iyer argues that, because Varanasi requested Iyer's accounting and never responded after Iyer sent it, for "the next fifteen years," he "believed he held 41000 shares of stock in Riversand." (*Id.* ¶ 14). Because a fraud claim accrues when the fraudulent conduct occurred, *Woods*, 769 S.W.2d at 517—here, the alleged implicit misrepresentation in June 2006 that Varanasi would award Iyer the number of shares shown on the accounting he sent to Varanasi—limitations expired on Iyer's fraud claim in June 2010. This suit was not filed until May 2025.

This analysis can change if "there is some basis for tolling the limitations periods." *Dunmore v. Chicago Title Ins. Co.*, 400 S.W.3d 635, 641 (Tex. App.—Dallas 2013, no pet.). Iyer offers two reasons to do so: (1) a new contract claim accrues if a party acknowledges in writing the existence of a contractual obligation after the limitations period; and (2) the discovery rule. Neither argument is persuasive.

Iyer argues that the defendants acknowledged Iyer's right to 41,000 shares of stock in 2021 by crediting him with 620 restricted stock units after Syndigo purchased Riversand. (Docket Entry

6

No. 6 at 16–17). Iyer also identifies other communications between the parties that he alleges are acknowledgements that Riversand owed Iyer 41,000 shares of Riversand stock. (*Id.* at 17–24). These arguments fail because, under Texas law, "an acknowledgment operates as a new obligation rather than merely as a revival of prior debt." *C&W Asset Acquisition LLC v. Knox*, 104 F. App'x 936, 939 (5th Cir. 2004). That means that the statute of limitations runs anew from the date of the acknowledgement, *see id.* at 939–40, and that any new claim is tied to the scope of the "particular obligation" that Syndigo "express[ed] a willingness to honor," *Stine*, 80 S.W.3d at 591.

These principles defeat Iyer's argument. In 2021, within the limitations period, Syndigo expressed only a willingness to honor Iyer's right to 620 restricted stock units; its communications cannot revive any obligation premised on the Iyer's mid-2000 agreements with Riversand. (*See, e.g.*, Docket Entry No. 6-1; Docket Entry No. 6-5). And each of the communications that Iyer attaches to his response fall well outside the limitations period, even if the court accepts that they acknowledge a broader scope of Iyer's contractual rights. (*See, e.g.*, Docket Entry No. 6 at 37; Docket Entry No. 6-2 (April 2007 emails); Docket Entry No. 6-3 (May 2007 emails); Docket Entry No. 6-4 (January 2011 email); Docket Entry No. 6-6 (2005 paystub)). The defendants did not cause Iyer's contract claim to accrue anew within the limitations period.

Nor does the discovery rule save Iyer's contract and fraud claims. "The discovery rule has been applied in limited categories of cases to defer accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)). "Contracting parties are generally not fiduciaries," so plaintiffs must exercise due diligence to protect their interests, *Via Net*, 211 S.W.3d at 314, even if they are allegedly defrauded, *see Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex.

7

1962) ("In an arm's-length transaction the defrauded party must exercise ordinary care for the protection of his own interests." (citation omitted)); *Barfield v. Howard M. Smith Co. of Amarillo*, 426 S.W.2d 834, 840 (Tex. 1968) ("As a party to arm's length business transactions, respondent had a duty to use ordinary care for the protection of its own interests . . . ."). "Due diligence may include asking a contract partner for information needed to verify contractual performance." *Via Net*, 211 S.W.3d at 314. Failure to conduct due diligence "is not excused by mere confidence in the honesty and integrity of the other party." *Courseview, Inc. v. Phillips Petroleum Co.*, 312 S.W.2d 197, 205 (Tex. 1957).

Iyer's pleading alleges facts that preclude him from claiming the benefit of the discovery rule. In his complaint, Iyer alleges that: he contacted Varanasi in 2006 about Riversand's failure to issue him the stock he believed was due under the consulting agreements; Varanasi requested an accounting; Iyer provided the accounting; and Varanasi did not respond. (Docket Entry No. 1-1 ¶¶ 11–14). Iyer knew or should have known that Varanasi had not issued him stock under the parties' consulting arrangement, precluding the application of the discovery rule to toll his contract claim. And even if Varanasi's nonresponse could be considered fraudulent concealment—which is doubtful, *see In re Uplift RX, LLC*, 667 B.R. 665, 695 (Bankr. S.D. Tex. 2024) ("[M]ere silence by itself does not rise to the level of fraudulent concealment."); *accord Texas v. Allan Const. Co.*, 851 F.2d 1526, 1532 (5th Cir. 1988)—Iyer alleges that he failed to follow up because he "continued in his trust and the specific statements and representations of his friends," (Docket Entry No. 1-1 ¶ 13). A plaintiff's trust in contracting parties, even if they are friends, does not excuse the duty to "exercise ordinary care" to pursue claims that have accrued. In this instance, Iyer did not follow up when Riversand failed to respond to his accounting of the shares he was

8

owed, failing to protect "his own interests." *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015) (quoting *Thigpen*, 363 S.W.2d at 251).

Iyer alleges that the defendants breached the parties' contracts and defrauded him because they did not issue him stock promised under their agreements, but he knew this nearly two decades ago. The statute of limitations bars his contract and fraud claims.

### B. Leave to Amend

In his responsive briefing, Iyer requests leave to amend if the court concludes that his current complaint does not state breach-of-contract or fraud claims. (Docket Entry No. 6 at 24). Rule 15(a) provides that a party may amend the party's pleading once without seeking leave of court or the consent of the adverse party at any time before a responsive pleading is served. After a responsive pleading is served, a party may amend only "with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Although a court "should freely give leave when justice so requires," *id.*, leave to amend "is not automatic," *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). A district court reviewing a motion to amend pleadings under Rule 15(a) may consider factors such as "undue delay, bad faith or dilatory motive . . . undue prejudice to the opposing party, and futility of amendment." *In re Southmark Corp.*, 88 F.3d 311, 314-15 (5th Cir. 1996).

The court denies Iyer's motion for leave to amend because Iyer's response brief shows that amendment would be futile: he cannot escape the statute of limitations on his claims. For the reasons explained in the last section, none of the additional documents Iyer attached to his responsive briefing could form the basis of an allegation that would state a claim within the limitations period.

9

Iyer relies on a 2007 conversation between himself and Varanasi. (Docket Entry Nos. 6-2, 6-3). In April 2007, Iyer emailed Varanasi to check on the "status . . . on the stock grant" because "[i]ts been far too long," and Iyer "want[ed] to make sure" the grant did "not get lost with the passage of time." (Docket Entry No. 6-2 at 1). A month later, Varanasi and Iyer connected on LinkedIn, prompting the two to exchange emails. (Docket Entry No. 6-3). In an email, Varanasi stated that he could bring Iyer's "share certificates" to a convention both were planning attend in order "to hand over" when they met. (*Id.* at 1). Iyer responded to this email by stating that "it would be nice to formally be a shareholder as well!" (*Id.*).

Accepting these communications as true and reading them in the light most favorable to Iyer could push his claim-accrual date to as late as 2021. The putative allegations could show that the defendants performed on the parties' contracts by crediting Iyer with stock on Riversand's books. Iyer would not have suffered harm until 2021, when Syndigo purchased Riversand and diluted Iyer's shares. *See Rogers v. Ricane Enters., Inc.*, 930 S.W.2d 157, 166 (Tex. App.—Amarillo 1996, writ denied) ("[T]he general rule is that limitations begin to run at the time of the unlawful taking.").

Such an injury, however, sounds in conversion, not breach of contract or fraud, because the defendants credited Iyer his 41,000 shares but later diluted the shares' value, either during the Riversand purchase or at some point before. *See Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009) ("In Texas, a shareholder may sue a corporation for conversion of shares."); *see Rio Grande Cattle Co. v. Burns*, 17 S.W. 1043, 1046 (Tex. 1891) (holding that failure "recognize any right of plaintiff in the corporation, or to the stock . . . amount[s] to a conversion under the law . . . ."); *Sandor Petrol. Corp. v. Williams*, 321 S.W.2d 614, 618–19 (Tex. Civ. App.—Eastland 1959, writ ref'd n.r.e.) ("The right of the corporation to regulate and to

manage its affairs does not include the power to impair that vested contractual right and to take from holders of unrestricted stock the value of their stock."). Claims for conversion, including a shareholder's claim for conversion of stock, are subject to a "two-year statute of limitation." *Roehrs v. Conesys, Inc.*, No. 05-cv-829, 2005 WL 3454015, at *2 (N.D. Tex. Dec. 14, 2005) (citing *Rogers*, 930 S.W.2d at 166); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (establishing a two-year statute of limitation for conversion of personal property); TEX. BUS. ORGS. § 21.801 (holding that "shares and other securities of a corporation are personal property"). So even if Iyer could reframe his complaint to state a claim that accrued in 2021, the legal theories under which he could possibly state a claim have a limitations period that ended in 2023, well before Iyer filed this suit in 2025. Even Iyer's best path forward cannot escape Texas's statutes of limitations.

The court concludes that amendment would be futile because Iyer cannot state a claim outside the applicable Texas statutes of limitations.

## IV.   Conclusion

The court grants Syndigo's motion to dismiss Iyer's breach-of-contract and fraud claims, (Docket Entry No. 4), and denies Iyer's motion for leave to amend, (Docket Entry No. 6). An order of dismissal is separately entered.

SIGNED on September 15, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge